## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

Subject to the approval of the United States District Court for the Eastern District of Tennessee (the "Court"), and pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act, ("FLSA"), named Plaintiff Mary J. Edwards and Defendant SumiRiko Tennessee, Inc. (together with Plaintiff "the Parties"), by and through their respective counsel, agree to the following Settlement Agreement and Release ("Agreement").

## <u>RECITALS</u>

A.      On February 27, 2020, the named Plaintiff Mary J. Edwards (the "Named Plaintiff") filed an action entitled *Edwards et al. v. SumiRiko Tennessee, Inc.,* No. 3:20-cv-00083-TRM-DCP, in the United States District Court for the Eastern District of Tennessee (the "Action"). [Doc. 1.]

B.      In the Action, the Named Plaintiff alleged that Defendant SumiRiko Tennessee, Inc. ("Defendant" or "SRK") violated the FLSA by failing to pay her for time worked off the clock during lunch periods, as well as for time worked off the clock prior to her shift in which she performed preparatory work. The Named Plaintiff sought damages, penalties, attorneys' fees, and costs, on her own behalf and on behalf of other current and former Production Associates employed by SRK, who they claim also were denied wages for time worked off the clock both during lunch periods and prior to their shifts.

C.      On May 11, 2020, SRK filed its Answer and Affirmative Defenses to the Complaint, denying the claims and allegations in the Complaint and denying that it had violated the FLSA, and asserting various affirmative defenses to liability. [Doc. 28.]

D.      In addition to the Named Plaintiff, thirty-three (33) putative collective members who are either current or former employees of SRK have either submitted consents or are in the process of submitting consents to join the Action. Collectively, those who joined the case will be referred to as Opt-In Plaintiffs.  Four of these Opt-Ins, Cheryl Jones, Chris Jones, Joshua Massey,

1

and Tommy Thompson are or were employed in a supervisory capacity during all or some of their time as employees and were not similarly situated to the Named Plaintiff during those time periods. The claims of Cheryl Jones and Tommy Thompson are due to be dismissed on that basis in their entirety, and the claims of Chris Jones and Joshua Massey are due to be limited to the time that they were employed as Production Associates within the applicable limitations period.

      E.     The parties have engaged in extensive fact investigation and informal discovery, providing information and data related to the claims and defenses. The Parties have agreed to focus their efforts on early settlement negotiations. Utilizing the data provided by SRK and information provided during the Parties' respective fact investigations, Plaintiff's counsel developed a damages calculation tool that they shared with SRK's counsel, for the purpose of facilitating negotiations. The Parties then engaged in arms-length negotiations and were able to reach an agreement to settle the claims in the Action.

      F.     Based upon the investigation of Plaintiff's Counsel, the informal discovery that occurred, the number of Opt-In Plaintiffs in the case, and taking into account the contested factual and legal issues involved, the expense and time necessary to prosecute the Action through trial, the risks and costs of further prosecution of the Action, the uncertainties of complex litigation, and the benefits to be received pursuant to this Agreement, Plaintiff and Plaintiff's Counsel have concluded that a settlement with Defendant on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of the Plaintiff and the Opt-in Plaintiffs. In particular the allegations in the case are limited to allegations off-the-clock work prior to shift time and during lunches which are vigorously disputed by Defendant.

      G.     Defendant denies the claims asserted in the Action and makes no admission whatsoever of liability or violation of the FLSA or any other statute. Defendant nevertheless

2

Case 3:20-cv-00083-TRM-DCP     Document 41     Filed 08/19/20     Page 2 of 22     PageID #: 157

desires to settle the Action on the terms set forth in this Agreement for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation, and for the purpose of putting to rest the controversies engendered by the Action.

H.     The Named Plaintiff has also filed a Claim with the U.S. Equal Employment Opportunity Commission ("EEOC"), captioned Charge No. 494-2020-01244 ("EEOC Charge"). As a part of this Agreement, the Parties also desire to compromise and settle the EEOC Charge pursuant to the terms and conditions set forth below.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** among the Parties, by and through their respective attorneys of record, and subject to the approval of the Court, that in consideration of the foregoing and of the promises and mutual covenants contained herein, and other good and valuable consideration, the Action shall be settled, released, and dismissed with prejudice, and the EEOC Charge shall be settled and withdrawn, upon and subject to the following terms and conditions.

## 1.     DEFINITIONS

For purposes of this Agreement, the following definitions shall apply, in addition to the definitions set forth in other sections of this Agreement:

A.     "Opt-in Plaintiffs" shall mean all individuals who filed consent forms with the Court requesting to participate in the Action or who have otherwise engaged Plaintiff's counsel to represent them in this matter but have not filed consent forms with the Court prior to the settlement of this matter. These individuals are included on Exhibit A to this Agreement.

B.     "Plaintiff" shall mean the Named Plaintiff and Opt-In Plaintiffs, collectively.

C.     "Released Claims" has the meaning set forth in Section 4, *infra.*

D.     "Released Parties" means SumiRiko Tennessee, Inc., including its predecessors and successors and each of their past, present, and future parents, subsidiaries, owners, officers, directors, employees, agents, insurers, and attorneys, and other affiliated persons and entities.

E.     "Settlement Effective Date" shall mean the date upon which the Court enters an Order granting approval of the Agreement.

F.     "Settling Plaintiffs" shall mean the Named Plaintiffs and all Opt-In Plaintiffs except Cheryl Jones and Tommy Thompson, whose claims will be dismissed from the Action without prejudice.

## 2.     <u>SETTLEMENT AMOUNT</u>

In consideration for the actions, promises and mutual covenants and releases described herein, the total gross sum of $194,024.08 (the "Settlement Amount") shall be paid by Defendant to resolve all Settling Plaintiffs' Released Claims as described in Section 4, *infra*. The Settlement Amount includes all amounts to be paid by Defendant, including amounts for payments to the Settling Plaintiffs, attorneys' fees, litigation costs, and expenses of Plaintiff's Counsel, costs incurred in administering this settlement, service fees to the Named Plaintiff, and consideration for settlement and withdrawal of the EEOC Charge. Under no circumstances shall Defendant be obligated to pay an amount in excess of $194,024.08, except for the employer's share of payroll taxes on the payments made to Settling Plaintiffs as W-2 income.

## 3.     <u>NO ADMISSION OF LIABILITY; INADMISSIBILITY OF THIS AGREEMENT; PARTIES' AUTHORITY</u>

This Agreement is a compromise of disputed claims and nothing in this Agreement shall be construed or deemed as an admission of liability, damages, culpability, negligence, wrongdoing, or other unlawful behavior on the part of Defendant at any time or for any purpose, under any

4

circumstances, by the Parties, the Released Parties, or by any third-party. The Parties further acknowledge and agree that neither this Agreement nor the settlement shall be used to suggest an admission of liability in any dispute the Parties or any third-parties may have now or in the future with respect to any person or entity, including Defendant and/or Released Parties. Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Agreement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms.

4.    **<u>RELEASED CLAIMS</u>**

Each and every Settling Plaintiff, on behalf of himself/herself, his/her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, hereby knowingly and voluntarily releases and discharges the Released Parties from all known and unknown claims for overtime compensation, wages, liquidated damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues) arising from the Settling Plaintiff's employment with Defendant up to the Settlement Effective Date, including, without limitation, claims asserted, or that could have been asserted, in the Action.

The Named Plaintiff, on behalf of her heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, also hereby knowingly and voluntarily release and discharge the Released Parties from any and all claims and rights of any kind that they may have, whether now known or unknown, including, but not limited to, arising out of or in any way connected with her employment with

5

Defendant. These claims and rights released include, but are not limited to, claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 (as amended); 42 U.S.C. § 1981 (as amended); the Age Discrimination in Employment Act; the Equal Pay Act; the Americans With Disabilities Act (as amended); Sections 503 and 504 of the Rehabilitation Act of 1973; the Family and Medical Leave Act; the Employee Retirement Income Security Act; the Occupational Safety and Health Act; the Workers' Adjustment and Retraining Notification Act, as amended; any state, civil or statutory laws, including any and all human rights laws and laws against discrimination, any other federal, state or local fair employment statute, code or ordinance, common law, contract law, tort, including, but not limited to, fraudulent inducement to enter into this contract, and any and all claims for attorneys' fees.

5.      **DISTRIBUTION OF SETTLEMENT AMOUNT**

A.      Of the $194,024.08 Settlement Amount, $78,000.00 will be allocated as attorneys' fees, $12,000.00 will be allocated as costs and expenses of settlement administration, and $94,024.08 will be allocated as an Allocation Fund (as defined below). To the extent the FLSA requires Court approval of the amount of attorneys' fees and litigation costs and expenses in an FLSA settlement, these attorneys' fees and litigation costs and expenses will be subject to Court approval. Defendant will not oppose Plaintiffs' Counsel's application, if necessary, to the Court for approval of attorneys' fees and litigation costs in the amounts set forth in this section.

B.      The Parties further agree that, in addition to the amounts set forth in subsection A above, that $5,000.00 will be allocated as reasonable service payment for the Named Plaintiff, for the time and effort the Named Plaintiff incurred in securing the settlement in this Action (in addition to compensating her for her portion of the overall settlement proceeds). If the Court

6

requires an application from Plaintiff's Counsel regarding the service payment, Defendant will not oppose this service payment request.

C.     The Parties further agree that, in addition to the amounts set forth in subsections A and B above, that $5,000.00 will be allocated as consideration for the settlement of and withdrawal of the Named Plaintiff's EEOC Charge and release of any and all claims set forth therein.

D.     Except as otherwise provided in Section 6.A. of this Agreement, the Parties shall bear their own attorneys' fees, costs, and expenses incurred in the prosecution, defense, or settlement of the Action and other claims being settled. The Settling Plaintiffs, Plaintiff's Counsel, Defendant, and Defendant's Counsel shall not seek an award of attorneys' fees, costs, or expenses in the Action except as set forth in Section 6.A. *supra*.

## 6.     CALCULATION OF SETTLEMENT ALLOCATION TO SETTLING PLAINTIFFS

After the payment for attorneys' fees, the payment for litigation costs and expenses, and the service payment and consideration for withdrawal of the EEOC Charge to the Named Plaintiff as outlined in Section 6, the amount allocated from the Settlement Amount to the Settlement Plaintiffs is $94,024.08 (the "Allocation Fund"). The Allocation Fund will be allocated to the Named Plaintiff and Opt-In Plaintiffs as reflected on Exhibit A to this Agreement. The formula used for the allocation was developed by Plaintiff's Counsel and takes into account: (i) the date the Settling Plaintiff's consent form was filed with the Court; (ii) his/her dates of employment with Defendant; (iii) his/her "regular rate" of pay calculated based on Defendant's payroll records; and (iv) an assumed 2.05 hours of allegedly uncompensated work per workweek, subject to Defendant continuing to dispute that any uncompensated work was performed.

## 7.   **PAYMENT TO PLAINTIFFS; TAXATION AND NO TAX ADVICE**

A.    Each Settling Plaintiff will receive one check from Defendant, which will be for the settlement amount allocated to that Settling Plaintiff in Exhibit A. The check will be allocated as wages, and payroll taxes will be withheld from this payment, which will be reported on an IRS Form W-2.

B.    Each Settling Plaintiff shall be obligated to obtain his or her own independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments and/or other remuneration he or she receives or obtains pursuant to this Agreement, and shall further assume the responsibility of remitting to the Internal Revenue Service and any other relevant taxing authorities any and all amounts required by law to be paid out of any monies received, or other remuneration obtained, under this Agreement, without any contribution whatsoever from any of the Released Parties or Plaintiff's Counsel. Nothing in this Agreement shall be construed as Defendant or Plaintiff's Counsel providing any advice regarding the reporting or payment of taxes or the tax consequences of a Settling Plaintiff's participation in any portion of this Agreement.

C.    Plaintiff's Counsel shall be responsible for distributing the Notice of Settlement in the form attached hereto as Exhibit B and the settlement checks to the Settling Plaintiffs.

D.    Provided that the Court approves the settlement, the claims of any Settling Plaintiffs asserted in the Lawsuit will be dismissed with prejudice and the Settling Plaintiffs will be bound by the release set forth in Section 4, *supra*.

**8. SEEKING COURT APPROVAL**

A. Within 14 days after execution of this Agreement, the Parties will file a Joint Motion to Approve Settlement with the Court. The Parties will cooperate in the drafting and submission of this Joint Motion.

**9. SETTLEMENT PAYMENT AND DISTRIBUTION OF CHECKS**

A. Defendant shall provide to Plaintiff's Counsel the settlement checks for each Settling Plaintiff (except for the amounts allocated for the Named Plaintiff as set forth in subsection C of this paragraph) within twenty-eight (28) days after the Settlement Effective Date. Checks to Settling Plaintiffs shall include the following release language on them:

> I, on behalf of myself, my respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-- in-interest, and assigns, hereby knowingly and voluntarily release and discharge SumiRiko Tennessee, Inc., including its predecessors and successors and their past, present, and future parents, subsidiaries, owners, officers, directors, employees, agents, insurers, and attorneys, and other affiliated persons and entities, from any and all known and unknown claims for overtime compensation, minimum wages, liquidated damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues) arising from my employment with SumiRiko Tennessee, Inc.

B. Checks to Settling Plaintiffs also shall indicate on their face that they will be void after ninety (90) days. Accordingly, Settling Plaintiffs shall have ninety (90) days to cash, deposit, or otherwise negotiate each of their settlement checks. Settlement checks that have not been cashed, deposited, or otherwise negotiated within 90 days shall be null and void. Any funds from such settlement checks shall be retained by Defendant.

C. Within twenty-eight (28) calendar days after the Settlement Effective Date, Defendant shall provide to Plaintiff's Counsel two settlement checks made payable to the Named

Plaintiff, Mary J. Edwards, each in the amount of $5,000.00. The first check shall be allocated for the service award as described in Paragraph 6(B), *supra*, and shall be reported on an IRS Form 1099 provided to the Named Plaintiff by Defendant. The second check shall be allocated as wages in consideration of the withdrawal of the EEOC Charge and shall be reported on the Named Plaintiff's IRS Form W-2.

      C.     Within twenty-eight (28) calendar days after the Settlement Effective Date, Defendant shall pay the attorneys' fees and litigation costs and settlement administration and expenses approved by the Court to Plaintiffs' Counsel via wire transfer or by check. Defendant will issue Jackson, Shields, Yeiser,Holt, Owen & Bryant an IRS Form 1099 for the attorneys' fees and litigation costs and settlement administration and expenses approved by the Court.

**10.    REASONABLE COMPROMISE OF BONA FIDE DISPUTE**

      The Parties agree that the terms of this Agreement represent a reasonable compromise of disputed issues, arising from a bona fide dispute over FLSA coverage and the merits of Plaintiffs' claims and alleged damages and agree to represent the same to the Court. The Parties further agree that the settlement is a fair, reasonable, and adequate resolution of Settling Plaintiffs' claims and is in the best interests of the Settling Plaintiffs. The Parties further agree that the Named Plaintiff's EEOC Charge also arises from a bona fide dispute of facts and that Defendant continues to deny any and all liability to the Named Plaintiff.

**11.    VOIDING THE AGREEMENT**

      A.     If the Court refuses to approve the Agreement, or any material part of it, Counsel for any party to this Agreement shall have the right to terminate this Agreement by providing written notice of their election to do so to counsel for the other party hereto within fifteen (15) calendar days after the Court's refusal. If, in approving this Agreement, the Court reduces the

10

amount of payment that will be made to Plaintiff's Counsel for attorneys' fees or costs, such reduction shall not be considered a material change to this Agreement and this Agreement shall remain enforceable.

B.      In the event that Counsel for any party exercises the right of termination set forth in Section 12(A), *supra*, then this Agreement shall be deemed null and void, of no force and effect, inadmissible as evidence and of no probative value, and the Parties hereto represent, warrant, and covenant that neither the Agreement nor any discussions, conversations, or negotiations leading to execution of the Agreement, will be used or referred to for any purpose whatsoever.

## 12.      <u>DISMISSAL OF ACTION</u>

If the Court approves this Agreement, the Parties shall request the Court to enter a Final Approval Order and Judgment that specifically includes provisions that:

    a.      Dismiss with prejudice all claims by Settling Plaintiffs in this Action;

    b.      Dismiss without prejudice all claims by Cheryl Jones and Tommy Thompson;

    c.      Reserve continuing jurisdiction over the construction, interpretation, implementation, and enforcement of this Agreement and over the administration and distribution of the benefits provided by this Agreement.

## 13.      <u>WITHDRAWAL OF EEOC CHARGE</u>

The Named Plaintiff represents and agrees that, within seven (7) days of the Settlement Effective Date, and as a condition precedent to the promises made herein for the payment of the consideration set forth in Paragraph 6(C), she will take all required steps to voluntarily request the withdrawal of the EEOC Charge before any ruling is issued. If the EEOC Charge was cross-filed with the Tennessee Human Rights Commission, the Named Plaintiff further agrees to take any

11

other actions necessary to withdraw any cross-filed charge. Should the EEOC decide to pursue an investigation despite the withdrawal of the Charge, the Named Plaintiff agrees that she shall not participate in any monetary recovery.

**14.** **MUTUAL FULL COOPERATION**

Counsel for the Parties agree to and shall use their best efforts to fully cooperate with each other in good faith and to take all actions reasonably necessary to implement the terms of this Agreement.

**15.** **CONSTRUCTION**

The Parties agree that the terms and conditions of this Agreement are the result of lengthy and intensive arm's-length negotiations between the Parties, with Plaintiff and the Opt-In Plaintiffs represented by Plaintiff's Counsel, and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Agreement. The Parties request that before declaring any provision of this Agreement invalid, the Court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents and the intent expressed in this Agreement.

**16.** **CAPTIONS AND INTERPRETATIONS**

Section titles or captions contained in this Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions.

**17.** **MODIFICATION**

This Agreement, including the attached Exhibits A-B, may not be changed, altered, or modified, except in a writing signed by counsel for the Parties and approval of the Court. This

Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the Parties and approved by the Court.

18. **INTEGRATION CLAUSE**

This Agreement and the attached Exhibits A-B, which are incorporated fully herein, contain the entire agreement between the Parties relating to the settlement of the Action, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged in this Agreement. No rights under this Agreement may be waived except in a writing signed by the counsel for the Parties as set forth in Section 12 or 18, *supra*.

19. **MUTUAL NON-DISPARAGEMENT**

The Named Plaintiff agrees not to make any defamatory or disparaging statements about Defendant or its employees, products and/or business practices. Defendant and its officers, managers, employees, agents and representatives similarly agree not to make any defamatory or disparaging statements about the Named Plaintiff to anyone, including, but not limited to, any prospective employers of Plaintiff. Defendant shall not be responsible for unauthorized remarks or expressions of personal opinion made by any employee not acting within his/her capacity and without Defendant's knowledge or consent. This provision does not limit either Party's right to give truthful responses in response to a lawful subpoena based on facts known to the Party.

20. **FUTURE RELATIONSHIP**

The Parties acknowledge and agree that Named Plaintiff shall not, at any time, apply for or seek reemployment with Defendant or with any parent, subsidiary, affiliate and/or successor of Defendant. In the event that Named Plaintiff does nevertheless seek such employment, Named

Plaintiff agrees that her violation of the terms of this Agreement shall be sufficient reason for Defendant to reject Named Plaintiff's application and to refuse to reemploy her.

21. **<u>BINDING ON ASSIGNS</u>**

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

22. **<u>COUNTERPARTS & SIGNATURES</u>**

This Agreement may be executed in counterparts, and when counsel have signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement. This Agreement may be executed by facsimile signatures, PDF, or email, which shall be deemed to be originals.

23. **<u>APPLICABLE LAW</u>**

This Agreement shall be governed by and construed in accordance with federal law and the law of the State of Tennessee, to the extent federal law does not apply.

*[THIS SPACE IS INTENTIONALLY LEFT BLANK. SIGNATURE PAGE FOLLOWS]*

14

IT IS SO AGREED.


Dated: _____        **Plaintiff Mary J. Edwards**

                                       By:    _____
                                              Mary J. Edwards




Dated: _____        **Jackson, Shields, Yeiser,Holt,**
                                       **Owen & Bryant**
                                       By:    _____
                                              Russ Bryant
                                              Attorney for Settling Plaintiffs




Dated: _____        **SumiRiko Tennessee, Inc.**

                                       By:    _____

                                       Name:  _____

                                       Title: _____

# EXHIBIT "A"

| Name | Start Date | End Date | Wage/Salary | CONSENT | 2 YEAR - SOL | 3 YEAR - SOL | 2 YEAR - WEEKS | 3 YEAR - WEEKS | 2 YEAR DAMAGES | 3 YEAR DAMAGES | HOURS | 2 YEAR TOTAL UNLIQUIDATED | 3 YEAR TOTAL UNLIQUIDATED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balko, Michael | 6/10/2019 | 3/4/2020 | $ 16.78 | 3/20/2020 | 3/20/2018 | 3/20/2017 | 38.29 | 38.29 | $ 1,975.49 | $ 1,975.49 | 2.05 | $ 71,359.04 | $ 94,024.08 |
| Barnett, Ronnie | 12/19/2016 | 3/25/2020 | $ 18.21 | 3/19/2020 | 3/19/2018 | 3/19/2017 | 105.29 | 157.43 | $ 5,895.55 | $ 8,815.33 | | | |
| Edwards, Mary J. | 2/25/2018 | 10/16/2019 | $ 16.28 | 2/27/2020 | 2/27/2018 | 2/27/2017 | 85.14 | 85.43 | $ 4,262.34 | $ 4,276.64 | | | |
| Jones, Chris | 1/13/2020 | 3/9/2020 | $ 16.78 | 3/18/2020 | 3/18/2018 | 3/18/2017 | 8.00 | 8.00 | $ 412.79 | $ 412.79 | | | |
| Massey, Joshua | 9/16/2018 | 1/7/2019 | $ 17.71 | 3/10/2020 | 3/10/2018 | 3/10/2017 | 16.14 | 16.14 | $ 879.11 | $ 879.11 | | | |
| Mobley, Marvin | 3/20/2016 | 12/2/2019 | $ 16.78 | 3/11/2020 | 3/11/2018 | 3/11/2017 | 90.14 | 142.29 | $ 4,651.24 | $ 7,341.73 | | | |
| Mullins, Jolayna | 9/17/2017 | 9/10/2018 | $ 16.45 | 3/11/2020 | 3/11/2018 | 3/11/2017 | 26.14 | 51.14 | $ 1,322.40 | $ 2,587.00 | | | |
| Napier, James | 9/6/2005 | 12/1/2018 | $ 20.07 | 3/30/2020 | 3/30/2018 | 3/30/2017 | 35.14 | 87.29 | $ 2,168.85 | $ 5,386.86 | | | |
| Napier, James | 12/4/2017 | 8/22/2019 | $ 16.78 | 4/3/2020 | 4/3/2018 | 4/3/2017 | 72.29 | 89.43 | $ 3,729.83 | $ 4,614.38 | | | |
| Rusaw, Dale | 10/1/2018 | CURRENT | $ 14.04 | 4/8/2020 | 4/8/2018 | 4/8/2017 | 93.57 | 93.57 | $ 4,039.76 | $ 4,039.76 | | | |
| Rusaw, Stephanie | 10/15/2018 | 4/1/2020 | $ 12.56 | 4/8/2020 | 4/8/2018 | 4/8/2017 | 76.29 | 76.29 | $ 2,946.31 | $ 2,946.31 | | | |
| Smallwood, John W. | 10/8/2017 | CURRENT | $ 16.28 | 3/11/2020 | 3/11/2018 | 3/11/2017 | 122.71 | 144.71 | $ 6,143.20 | $ 7,244.54 | | | |
| Stedam, Jason | 6/8/2015 | 6/7/2018 | $ 16.95 | 4/16/2020 | 4/16/2018 | 4/16/2017 | 7.43 | 59.57 | $ 387.19 | $ 3,104.94 | | | |
| Tuck, Charlotte | 7/24/2017 | 2/20/2020 | $ 16.78 | 3/18/2020 | 3/18/2018 | 3/18/2017 | 100.57 | 134.43 | $ 5,189.33 | $ 6,936.31 | | | |
| Johnson, Gregory | 9/23/2019 | 2/24/2020 | $ 11.36 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 22.00 | 22.00 | $ 768.50 | $ 768.50 | | | |
| Lunsford, Bill | 9/16/2018 | 2/18/2019 | $ 11.13 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 22.14 | 22.14 | $ 757.83 | $ 757.83 | | | |
| Carnes, Thomas | 3/1/2016 | 11/10/2017 | $ 16.13 | 4/21/2020 | 4/21/2018 | 4/21/2017 | -23.14 | 29.00 | $ - | $ 1,438.39 | | | |
| Clouse, Johnathan | 11/8/2015 | 7/21/2017 | $ 16.13 | 4/21/2020 | 4/21/2018 | 4/21/2017 | -39.14 | 13.00 | $ - | $ 644.80 | | | |
| Teague, Jessica | 12/4/2017 | 1/20/2020 | $ 16.28 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 91.29 | 111.00 | $ 4,569.85 | $ 5,556.77 | | | |
| Hardy, Michael | 10/7/2018 | 10/8/2019 | $ 13.54 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 52.29 | 52.29 | $ 2,176.94 | $ 2,176.94 | | | |
| Crabtree, Jason | 3/4/2019 | 3/13/2019 | $ 11.63 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 1.29 | 1.29 | $ 45.98 | $ 45.98 | | | |
| Muse, Matthew | 12/4/2017 | 10/9/2018 | $ 13.76 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 24.43 | 44.14 | $ 1,033.62 | $ 1,867.77 | | | |
| Witt, Daniella | 9/9/2019 | CURRENT | $ 12.56 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 44.57 | 44.57 | $ 1,721.44 | $ 1,721.44 | | | |
| Brock, Eric | 11/5/2018 | 12/5/2018 | $ 13.76 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 4.29 | 4.29 | $ 181.34 | $ 181.34 | | | |
| Peters, Bobbie | 10/22/2018 | 8/20/2019 | $ 14.04 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 43.14 | 43.14 | $ 1,862.61 | $ 1,862.61 | | | |
| Brantley, Tim | 12/5/2005 | CURRENT | $ 16.28 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 116.86 | 169.00 | $ 5,849.99 | $ 8,460.31 | | | |
| Cansler, Joey | 3/12/2018 | 12/19/2018 | $ 12.81 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 34.57 | 40.29 | $ 1,361.79 | $ 1,586.88 | | | |
| Hewitt, Margaret | 9/24/2018 | CURRENT | $ 16.78 | 4/29/2020 | 4/29/2018 | 4/29/2017 | 94.57 | 94.57 | $ 4,879.74 | $ 4,879.74 | | | |
| Stultz, Anita | 10/7/2019 | 2/26/2020 | $ 11.86 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 20.29 | 20.29 | $ 739.81 | $ 739.81 | | | |
| Tanner, Logan | 12/2/2019 | CURRENT | $ 14.04 | 4/21/2020 | 4/21/2018 | 4/21/2017 | 32.57 | 32.57 | $ 1,406.21 | $ 1,406.21 | | | |

# EXHIBIT "B"

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**NORTHERN DIVISION**

---

**MARY J. EDWARDS**, *Individually,*
*and on behalf of herself and other similarly*
*situated current and former employees*,

Plaintiff,

v.                                                              **NO.** 3:20-cv-83-TRM-DCP

**SUMIRIKO TENNESSEE, INC.**                    **FLSA Opt-In Collective Action**
*A Delaware Corporation,*                            **JURY DEMANDED**

Defendant.

---

## COLLECTIVE ACTION SETTLEMENT NOTICE

**IF YOU RECEIVED THIS NOTICE YOU ARE COVERED BY THE SETTLEMENT OF THIS COLLECTIVE ACTION LAWSUIT.**

**THIS NOTICE SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.  PLEASE READ THIS DOCUMENT CAREFULLY.**

1.      **What is the Lawsuit About?**

The United States District Court for the Eastern District of Tennessee ("Court") presides over this Lawsuit, which was filed on February 27, 2020, by Named Plaintiff Mary J. Edwards ("Named Plaintiff") against Defendant SumiRiko Tennessee, Inc. ("SRK"). The Named Plaintiff brought the Lawsuit as an alleged "collective action" on behalf of herself and others who worked for SRK as Production Associates from February 27, 2017 to [insert].

This Lawsuit alleges that certain SRK Production Associates worked through their lunches and also worked prior to their assigned shifts and were not compensated for this time worked.

SRK disagrees with the Named Plaintiff's claims and denies any violation of the FLSA or any other laws.  SRK asserts that the Named Plaintiff and other Production Associates were paid for all hours worked.

**2. Why did I get this Notice?**

You are receiving this Notice because the Parties have reached a court-approved settlement of this Lawsuit.

The Lawsuit covers the time period between February 27, 2017, and [INSERT]. According to SRK's records, you worked for SRK as a Production Associate during all or part of the above time period. As a result, you have either submitted a Consent to Join the Lawsuit to the Court or have otherwise communicated about the Lawsuit and your intent to join the lawsuit with the law firm identified in Paragraph 6 of this Notice.

You have the right to learn about the settlement of the Lawsuit and, if you choose, to participate or not participate in the settlement.

With this Notice, you are receiving a settlement check which is explained below. You will automatically be covered by the settlement if you cash your settlement check within 90 days of the date of the check. To participate in the settlement, all you need to do is cash your settlement check. You do not need to contact anyone or sign any paperwork.

**3. What does the settlement provide?**

The Court approved the settlement on [insert date of approval].

Under the settlement, you are entitled to a gross settlement amount of $[insert Payout Amount]. The check enclosed here represents your settlement payment and is considered wages for which ordinary payroll and income taxes have been withheld by SRK. You will not pay any additional attorney's fees or expenses out of your individual settlement payment as the Court separately awarded those amounts when the Court approved the settlement.

Your settlement amount was calculated based on SRK's records from February 27, 2017, to [insert date of approval].

**4. Why is there a settlement?**

The settlement is a compromise. It allows the parties to avoid the costs and risks of further litigation and provides money to the Named Plaintiff and you without significant delay. In reaching this settlement, SRK has not admitted that it violated any laws and has specifically denied that it violated any laws. Had the Parties not agreed to this settlement, you may not have recovered anything at all from the Lawsuit.

**5. What do I give up by participating in the settlement?**

If you participate in this settlement by cashing your settlement check, you will release all legal claims you may have against SRK or any of its successors, predecessors, parents, subsidiaries, officers, directors, managers, employees, agents, or affiliates seeking damages for all unpaid wages and overtime pay for the workweeks under the Settlement Agreement under the Fair Labor Standards Act, or any other state or local statute, regulation, or legal theory arising on or after February 27, 2017 through [insert date of approval]. In addition, you will waive all such unpaid wages and overtime claims for those workweeks arising under the Federal Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

**6. Do I have a lawyer in this case?**

Yes. The Court has designated the following law firm to serve as counsel and represent the interests of the Named Plaintiff and all other individuals covered by this Settlement:

J. Russ Bryant, Esq.
JACKSON SHIELDS YEISER, HOLT,
OWEN & BRYANT
262 German Oak Drive
Memphis, TN 38018
(901) 754-8001
rbryant@jsyc.com

3

Lawyers and staff members from this law firm are available to answer your questions in strict confidence. If you call the firm, please identify yourself as a plaintiff in the "SRK FLSA Lawsuit."

**7.      How do I obtain more information?**

This Notice summarizes the most important aspects of the proposed settlement. You can obtain further information by contacting the law firm listed above.

<u>**DO NOT CONTACT THE COURT REGARDING THIS SETTLEMENT.**</u>

**THE COURT MUST REMAIN NEUTRAL IN THIS MATTER AND CANNOT OFFER YOU ADVICE OR RESPOND TO QUESTIONS.**

4